## McDONALD *v.* THE RESOLUTE.

*District Court, W. D. Pennsylvania.* April 12, 1889.)

**1. SALVAGE—PILOTS.**

The steam tow-boat R. having in charge a tow of five coal-barges, in the evening, shortly after dark, broke loose from her mooring at the Monongahela wharf in the port of Pittsburgh, and drifted down stream. The river was high, and full of running ice. The R. was in danger of striking craft moored to the shore, and of suffering injury by such collisions. She sounded her distress whistle, and her mate, the officer then in command, who was himself a licensed pilot, called for a pilot. The libelant, a pilot, in answer to the

call, at some personal risk, jumped upon one of the floating barges, and, reaching the pilot-house of the R., took charge of the wheel, and in the course of an hour brought the boat and three of her barges safely to shore. *Held,* that the assistance rendered by the libelant was a salvage service.

**2. SAME—AMOUNT OF AWARD.**

The R. was of the value of $12,000; but she was in no danger of total loss, nor in any extreme peril. *Held, therefore,* that the sum of $250 was a fair salvage compensation.

In Admiralty.

*S. M. Raymond,* for libelant.

*Knox & Reed,* for claimants.

ACHESON, J. This is a suit for the recovery of salvage claimed by the libelant for services rendered by him to the steam tow-boat Resolute, under the following circumstances: On the evening of January 2, 1888, the Resolute was moored in the Monongahela river, at the public wharf in the port of Pittsburgh, having lashed to her a tow consisting of five coal-barges,—four loaded, and one empty. The river was high,—the stage of water being about 12 feet,—and was full of running ice from a gorge which had broken above. The boat lay with her head up-stream. She had steam up, and was working her wheel against the force of the current. In this condition of affairs, after dark, about 7 o'clock P. M., the Resolute broke loose from her moorings, and drifted against the steam-boat Onward, which was lying immediately below, and set her adrift. At this juncture the master of the Resolute, Capt. Warren Elsey, who had been in the pilot-house at the wheel, went out to catch a line to check up the Resolute, and in attempting to do so fell into the river. John Higbee, the mate of the Resolute, then went into the pilot-house, and took charge of the wheel. The Resolute drifted down the river stern foremost, her wheel, however, working up strongly. The steam-boat Beaver was moored to shore about 1,000 feet below the place where the Resolute had lain. Just before she reached the Beaver, the Resolute blew her distress whistle. One of the barges in her tow struck the Beaver. The captain of the Beaver, Joseph McDonald, hallooed to those aboard the Resolute to stop her; that they were working into the Beaver. To this the mate of the Resolute (Higbee) replied that they had no pilot, and he asked for one. Upon the request of Capt. McDonald, the libelant, who was an assistant pilot on the Beaver, immediately went to the relief of the Resolute. At the time Capt. McDonald spoke to him the libelant was on the hurricane roof of the Beaver. Taking hold with his hands of the upper railing he let himself down so that his feet touched the railing of the boiler deck, and from there he jumped to one of the barges of the Resolute, part of her tow, then drifting past the Beaver. It was dark, and the floating barge was distant four or five feet from the Beaver. The libelant at once went into the pilot-house of the Resolute. Higbee yielded the wheel to him, and he took charge of the entire movements of the boat. In the course of an hour or more the libelant had succeeded in getting the Resolute with three of her barges (the other two had broken away) safely moored to shore under the point at the junc-

tion of the Monongahela and Allegheny rivers. The libelant remained in exclusive charge of the wheel until about 9 o'clock the next morning, when he delivered the boat to Capt. Elsey. The Resolute, when the libelant took charge of her wheel, was in danger of striking craft moored to the shore, and of suffering injury by such collisions, and was also in danger of sticking at the head of Glass-House ripple. When the libelant went to the succor of the Resolute he believed—and had good reason to believe, from what Higbee, the mate, had said—that the boat was altogether without a pilot. But it now appears from the proofs that Higbee had been a licensed pilot for several years; but at the time of this occurrence his proper position on the boat was that of mate.

Such being the facts of the case, as I deduce them from the evidence, I cannot doubt that the assistance which the libelant thus rendered the Resolute was a salvage service. The danger to the boat was real and impending. She had given a signal of distress. Her mate—the officer then in command of the boat—called for the aid of a pilot, stating, according to the clear weight of evidence, that the boat was without a pilot. The libelant's service was voluntary. It was rendered promptly, and at some personal risk incurred in his jumping upon the drifting tow, and it was successful. True, it now turns out (contrary to what the libelant supposed when he was called, and went to her relief) that the Resolute had on board a person qualified to act as a pilot. But Higbee's proper duty was that of mate. He seems, too, to have distrusted his ability to cope with the difficulties in which he found himself. Under the circumstances, then, the owners of the Resolute, I think, should not be heard to say that the libelant rendered no salvage service, because there was on board the boat one who was a licensed pilot, and who, perhaps, might alone have proved equal to the emergency. But here, as in every case of the kind, the perplexing question is, what amount of compensation should be allowed the salvor? There is no evidence to fix the value of the three barges, nor to show the degree of danger, if any, to which they were exposed. The Resolute was of the value of $12,000; but it does not appear that she was in danger of total loss, nor is it evident that she was in any extreme peril. The libelant's ordinary wages as pilot for a trip occupying 10 days were $25. Having regard, then, to all the circumstances, I conclude that $250 would be a fair salvage compensation. Let a decree be drawn in favor of the libelant for that amount, with costs.